Laura B. Dowgin, Esq.
John Gainey, Esq.
Kennedys CMK LLP
*Counsel for Plaintiff,*
*West Bend Insurance Company*
*f/k/a West Bend mutual Insurance Company*
570 Lexington Avenue, 8th Floor
New York, New York 10022
T: 212-252-0004
Laura.dowgin@kennedyslaw.com
Jack.gainey@kennedyslaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WEST BEND INSURANCE COMPANY,** ) | |
| **f/k/a WEST BEND MUTUAL** ) | |
| **INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.** |
| **v.** ) | |
| ) | |
| **UNITED STATES OF AMERICA** ) | |
| **CHESS FEDERATION, RANDY BAUER,** ) | |
| **PETER TAMBURRO AND JENNIFER** ) | |
| **SHAHADE,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, West Bend Insurance Company, formerly known as West Bend

Mutual Insurance Company ("West Bend"), by and through its attorneys, Kennedys

CMK LLP, hereby files this Complaint for Declaratory Judgment against Defendants United States of America Chess Federation ("US Chess"), Randy Bauer ("Bauer"), Peter Tamburro ("Tamburro"), and Jennifer Shahade ("Shahade") (together, Defendants) and in support thereof, states as follows:

## JURISDICTION AND VENUE

1.     Plaintiff West Bend is a corporation organized under the laws of the State of Wisconsin with its principal place of business in Wisconsin.

2.     Defendant United States of America Chess Federation is a nonprofit corporation incorporated under the law of Illinois with its principal place of business in Missouri.

3.     Defendant Randy Bauer is a citizen of Iowa. He is the President of the Executive Board of US Chess.

4.     Defendant Peter Tamburro is a citizen of New Jersey.

5.     Defendant Jennifer Shahade is a citizen of Pennsylvania.

6.     The amount in controversy in this case exceeds the sum or value of $75,000, exclusive of interest and costs.

7.     Accordingly, this Court has diversity jurisdiction over this action under 28 U.S.C. § 1332.

8.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred, or a substantial part of the action is situated herein.

## THE POLICIES

### I.    The Employment Practices Liability Policies

9.     West Bend issued certain Employment Practices Liability Policies naming "United States of America Chess Federation" as the named insured, as set forth below:

a.  Policy Number A607452 03, with effective dates of May 31, 2022 to May 31, 2023 but which was cancelled effective August 30, 2022;

b.  Policy Number B163731 00, with effective dates of August 30, 2022 to August 30, 2023 but which was cancelled effective January 1, 2023;

c.  Policy Number B240635 00, with effective dates of January 1, 2023 to January 1, 2024;

d.  Policy Number B240635 01 with effective dates of January 1, 2024 to January 1, 2025.

(collectively the "Employers Liability Policies"). See Exhibits 1-4.

10.     In each of the Employers Liability Policies, the Declarations page lists a Retroactive Date of May 31, 2018.

3

11.    The Employers Liability Policies each have an Each Claim Limit of $5,000,000 and a Policy Aggregate Limit of $5,000.000.

12.    The Employers Liability Policies include the following Insuring Agreement, in relevant part:

**A. INSURING AGREEMENT**

1.    We will pay on behalf of the insured for "damages" in excess of the Deductible arising out of any "employment practices" to which this insurance applies.

     We have no obligation under this insurance to make payments or perform acts or services except as provided for in this paragraph and in Item 2. below.

2.    This insurance applies to such "damages" only if:

     a.    The "damages" result from "claims" made by "employees", "leased workers", "temporary workers", former "employees", a "third party", or applicants for employment with you;

     b.    The "employment practices" take place in the "coverage territory";

     c.    Such "employment practices" occurred after the Retroactive Date, if any, shown in the Declarations and before the end of the policy period; if no date is shown, a retroactive date does not apply, but Exclusion 1. for prior or pending claims or for prior knowledge of a potential claim does apply.

     d.    A "claim" is both:

          (i)    First made against any insured, in accordance with paragraph 3. below, during the policy period or any Extended Reporting Period we provide under

4

> > Section VI-EXTENDED REPORTING PERIODS; and
> >
> > (ii)    Reported to us either (i) during the policy period or within sixty (60) days thereafter, or (ii) with respect to any claim" first made during any Extended Reporting Period we provide under Section VI-EXTENDED REPORTING PERIODS, during such Extended Reporting Period.[1]

3.    A "claim" will be deemed to have been made at the earlier of the following times:

> a.    When notice of such "claim" is received and recorded by you or by us, whichever comes first; or
>
> b.    When we make settlement in accordance with paragraph B.1. below.

4.    All "claims" for "damages" based on or arising out of:

> a.    One "employment practice"; or
>
> b.    An interrelated series of "employment practices" by one or more insureds shall be deemed to be one "claim" and to have been made at the time the first of those "claims" is made against any insured(s).

5.    Each payment we make for "damages" reduces the Amount of Insurance available, as provided under SECTION III – LIMITS OF INSURANCE.

---

[1] For the Employers Liability Policies issued beginning August 30, 2022, the following language is added to the end of this Paragraph: "However, no claim will be denied based upon the insured's failure to provide notice within such specified time, unless this failure operates to prejudice the rights of the insurer, as per Missouri regulation 20CSR100-1.020."

13.    The Employers Liability Policies state that the following individuals constitute insureds, in addition to US Chess:

> Your current or former directors are insureds, but only with respect to their duties as your directors."

> Your current or former 'employees' [are insureds] but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

14.    The Employers Liability Policies contain the following relevant definitions:

> "Bodily injury" means physical injury to the body, sickness or disease sustained by a person as the result of direct physical injury to the body, including death resulting from any of these at any time. 'Bodily injury' does not include mental anguish or emotional distress that results from an 'employment practice.'

*    *    *

> "Claim" means written or oral notice presented by:

> 1.    Any "employee", "leased worker", "temporary worker", former "employee" or applicant for employment by you; or

> 2.    The EEOC or any other Federal, state or local administrative or regulatory agency on behalf of such person in item 1. immediately preceding, that the insured is responsible for "damages" as a result of injury arising out of any "employment practices".

> "Claim" includes any civil proceeding in which either "damages" are alleged or fact finding will take place, when either is the actual or alleged result of any "employment practice" to which this insurance applies. This includes:

6

    a.       An arbitration proceeding in which such "damages" are claimed and to which the insured submits with our consent;

    b.       Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the insured submits with our consent; or

    c.       Any administrative proceedings established under applicable federal, state or local laws as may be applicable to "employment practices" covered under this insurance.

    d.       Any civil proceeding alleging violation of the Fair Labor Standards Act.

*    *    *

"Damages" means monetary amounts to which this insurance applies and which the insured is legally obligated to pay as judgments or awards, or as settlements to which we have agreed in writing. "Damages" include (i) "pre-judgment interest" awarded against the insured on that part of the judgment we pay, (ii) to the extent allowed by law, any portion of a judgment or award that represents a multiple of the compensatory amounts or punitive or exemplary damages, and (iii) statutory attorney fees.

"Damages" do not include:[2]

1.    Civil, criminal, administrative or other fines or penalties;

2.    Equitable relief, injunctive relief, declarative relief or any other relief or recovery other than monetary amounts; or

3.    Judgments or awards because of acts deemed uninsurable by law.

*    *    *

---

[2] For the Employers Liability Policies issued beginning August 30, 2022, Sub-paragraph ii is replaced as follows: "(ii) any portion of a judgment or award that represents a multiple of the compensatory amounts or punitive or exemplary damages. Paragraph 3 is deleted.

"Employee" means a person:

1.      employed by you for wages or salary, or

2.      who is a current or former member of your board of directors; or

3.      who is a volunteer worker for whom you have the right to direct and control while performing services for you.

But "employee" does not include any independent contractor, any employees of any independent contractor while acting within the scope of their employment, or any "temporary worker."

\*      \*      \*

"Employment Practices" means any of the following actual or alleged practices (i) which are directed against any of your "employees", "leased workers", "temporary workers", former "employees", a "third party" or any applicant for employment by you, and (ii) for which remedy is sought under any federal, state or local statutory or common civil employment law:

1.      Wrongful refusal to employ a qualified applicant for employment;

2.      Wrongful failure to promote or wrongful deprivation of career opportunity;

3.      Wrongful demotion, negligent evaluation, negligent reassignment or wrongful discipline;

4.      Wrongful termination of employment, including retaliatory or constructive discharge;

5.      Employment related misrepresentation;

6.      Harassment, coercion, discrimination or humiliation as a consequence of race, color, creed, national origin, marital status,

medical condition, gender, age, physical appearance, physical and/or mental impairments, pregnancy, sexual orientation or sexual preference or any other protected class or characteristic established by any applicable federal, state, or local statute; or

7.      Oral or written publication of material that slanders, defames, libels, violates, or invades a right of privacy.

\*      \*      \*

"Third party" means any natural person who is an active or current customer, supplier, vendor, applicant, business invitee or other client of the insured.

\*      \*      \*

15.     The Employers Liability Policies have the following applicable exclusions:

This insurance does not apply to 'claims' arising directly or indirectly from any…

1.
      a.      'Employment practices' which were the subject of any demand, suit or other proceeding which was initiated against any insured; or

      b.      Facts and circumstances, which would cause a reasonable person to believe a 'claim' would be made and which were known to any insured, prior to the effective date of the earlier of (i) the first policy of this type that we issued to you of which this policy was an uninterrupted renewal of this type of coverage, or (ii) this policy."

\*      \*      \*

5.      Oral or written publication of material, if such material:

9

      **a.** Was published by or at the direction of the insured with knowledge of the material's falsity; or

      **b.** Was first published before the Retroactive Date, if any, shown in the Declarations."

*    *    *

**6.** Dishonest, criminal or fraudulent acts of the insured or the willful failure by the insured or with the insured's consent to comply with any law or any governmental or administrative order or regulation relating to employment practices. Willful means acting with intentional or reckless disregard for such employment related laws, orders or regulations.

The enforcement of this exclusion against any insured under this policy shall not be imputed to any other insured."

*    *    *

**7.** "Bodily injury."

16. The Employers Liability Policies each contain an endorsement that states:

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same 'occurrence' or 'claim', the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**II. The Not-For-Profit Organization Directors, Officers and Trustees Liability Insurance Policies**

17.    West Bend issued certain Not-For-Profit Organization Directors, Officers and Trustees Liability Insurance policies naming "United States of America Chess Federation" as the named insured as follows:

a.  Policy Number A607445 03, with effective dates of May 31, 2022 to May 31, 2023 but cancelled effective August 30, 2022;

b.  Policy Number B163759 00, with effective dates of August 30, 2022 to August 30, 2023, but cancelled January 1, 2023;

c.  Policy Number B240621 00, with effective dates of January 1, 2023 to January 1, 2024;

d.  Policy Number B240621 01, with effective dates of January 1, 2024 to January 1, 2025.

(collectively the "Directors and Officers Policies"). See Exhibits 5-8.

18.    Each of the Directors and Officers Policies Declarations page lists a Retroactive Date of May 31, 2018.

19.    The Directors and Officers Policies' have an Each Claim Limit of $5,000,000 and a Policy Aggregate Limit of $5,000.000.

20.    The Insuring Agreement in the Directors and Officers Policies provides, in relevant part:

a.  We will pay on behalf of an "Insured Person" for "Damages" in excess of the deductible arising out of any "Wrongful Acts"

unless the insured entity pays such "Damages" to or on behalf of the Directors, Officers and Trustees as indemnification.

b.    We will pay on behalf of the insured entity for "damages" in excess of the deductible for the "Wrongful Acts" of the "Insured" if the insured entity pays such "Damages" to or on behalf of the Directors, Officers and Trustees as indemnification.

c.    We will pay on behalf of the insured entity for "Damages" in excess of the deductible for its "Wrongful Acts".

d.    We have no obligation under this insurance to make payments or perform acts or services except as provided for in this paragraph and in Item 2. below.

e.    This insurance applies to such "Damages" only if:

(1)    The "Wrongful Acts" take place in the "Coverage Territory";

(2)    Such "Wrongful Acts" were committed after the Retroactive Date, if any, shown in the Declarations and before the end of the policy period; and

(3)    A "Claim" is both:

(a)    First made against any insured, in accordance with paragraph f. below, during the policy period or any Extended Reporting Period we provide under SECTION VII – EXTENDED REPORTING PERIODS; and

(b)    Reported to us either (i) during the policy period or within sixty (60) days thereafter, or (ii) with respect to any "Claim" first made during any Extended Reporting Period we provide under SECTION VII - EXTENDED REPORTING PERIODS, during such Extended Reporting Period.

f.    A "Claim" will be deemed to have been made at the earlier of the following times:

(1)    When notice of such "Claim" is received and recorded by you or by us, whichever comes first; or

(2)    When we make settlement in accordance with paragraph 2.a. below.

g.    All "Claims" for "Damages" based on or arising out of:

(1)    One "Wrongful Act"; or

(2)    An interrelated series of "Wrongful Acts" by one or more insureds shall be deemed to be one "Claim" and to have been made at the time the first of those "Claims" is made against any insured(s).

h.    Each payment we make for "Damages" reduces the amount of insurance available, as provided under SECTION III - LIMITS OF INSURANCE.

21.    The Directors and Officers Policies state that in addition to US Chess, the following qualify as "Insured Persons":

**a.**    any past, present or future duly elected or appointed director, officer or trustee,

**b.**    past, present or future members of duly constituted commissions, boards or other units operated under your charter and written approval,

**c.**    your current or former 'Employees' but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business,

**d.**    any person providing volunteer services for you, at your request, and operating under your direction and control,

13

    **e.**    any person serving as a director or officer of another nonprofit organization at your express written direction,

    **f.**    the estates, heirs, legal representatives or assigns of deceased persons who were 'Insured Persons' at the time of the 'Wrongful Act' upon which a 'Claim' is based,

    **g.**    the legal representatives or assigns of an 'Insured Person' in the event of their incompetence, insolvency or bankruptcy, and

    **h.**    the lawful spouse of an "Insured Person" under items **a.** and **b.** above is also an 'Insured Person', but solely by reason of such spouse's status as a spouse or such spouse's ownership interest in property which the claimant seeks as recovery for an alleged 'Wrongful Act'."

22.    The Directors and Officers Policies include the following relevant definitions:

"Bodily Injury" means physical injury to the body, sickness or disease sustained by a person as the result of direct physical injury to the body, including death resulting from any of these at any time.

\*    \*    \*

"Claim" means:

a.    written demand for monetary damages;

b.    civil proceeding commenced by the service of a complaint or similar pleading;

\*    \*    \*

"Damages" means monetary amounts to which this insurance applies and which the insured is legally obligated to pay as judgments or awards, or as settlements to which we have agreed in writing. 'Damages' include:

(a)    'Pre-judgment interest' awarded against the insured on that part of the judgment we pay,

(b)    to the extent allowed by law, any portion of a judgment or award that represents a multiple of the compensatory amounts or punitive or exemplary damages, and

(c)    statutory attorney fees.

'Damages' do not include:

> 1.    Civil, criminal, administrative or other fines or penalties;
>
> 2.    Equitable relief, injunctive relief, declarative relief or any other relief or recovery other than monetary amounts; or
>
> 3.    Judgments or awards because of acts deemed uninsurable by law.

*    *    *

"Employment Practices Wrongful Act" means any of the following actual or alleged practices

a.    which are directed against any of your "Employees", "Leased Workers", "Temporary Workers", former "Employees" or any applicant for employment by you, and

b.    for which remedy is sought under any federal, state or local statutory or common civil employment law:

> (1)    Wrongful refusal to employ a qualified applicant for employment;
>
> (2)    Wrongful failure to promote, or wrongful deprivation of career opportunity;
>
> (3)    Wrongful demotion, negligent evaluation, negligent reassignment or wrongful discipline;

 (4) Wrongful termination of employment, including retaliatory or constructive discharge;

 (5) Employment related misrepresentation;

 (6) Harassment, coercion, discrimination or humiliation as a consequence of race, color, creed, national origin, marital status, medical condition, gender, age, physical appearance, physical and/or mental impairments, pregnancy, sexual orientation or sexual preference or any other protected class or characteristic established by any applicable federal, state, or local statute; or

 (7) Oral or written publication of material that slanders, defames or libels or violates or invades a right of privacy.

*  *  *

"Wrongful Act" means:

 **a.** Any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by a Director, Officer or Trustee in his or her capacity as such;

 **b.** Any matter asserted against a Director, Officer or Trustee solely by reason of his or her status as director, officer, trustee, employee, volunteer or member of a duly constituted committee of the insured entity; and

 **c.** Any other actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by the insured entity.

"Wrongful Act" shall not include any "Employment Practices Wrongful Act".

23. The Directors and Officers Policies have the following applicable exclusions:

 **a.** This insurance does not apply to 'claims' arising directly or indirectly from any…

16

**(1)**  "Wrongful Acts" which were the subject of any demand, suit or other proceeding which was initiated against any insured; or

**(2)**  Facts and circumstances which would cause a reasonable person to believe a "claim" would be made and which were known to any insured;

prior to the effective date of the earlier of the first policy of this type that we issued to you of which this policy was an uninterrupted renewal of this type of coverage, or this policy.

\*      \*      \*

**e.**  Oral or written publication of material, if such material:

**(1)**  Was published by or at the direction of the insured with knowledge of the material's falsity; or

**(2)**  Was first published before the Retroactive Date, if any, shown in the Declarations.

**f.**  Dishonest, criminal or fraudulent acts of the insured or the willful failure by the insured or with the insured's consent to comply with any law or any governmental or administrative order or regulation. Willful means acting with intentional or reckless disregard for such laws, orders or regulations.

The enforcement of this exclusion against any insured under this policy shall not be imputed to any other insured.

**g.**  "Bodily Injury", "Property Damage", or "Personal and Advertising Injury".

\*      \*      \*

**m.**  Brought or maintained by or on behalf of any "Insured" except a "Claim" that is a derivative action brought or maintained on behalf of the insured entity by one or more persons who are not Directors, Officers and Trustees and who bring and maintain such "Claim" without solicitation, assistance or participation of any "Insured".

\*     \*     \*

**p.**     "Employment Practices Wrongful Act".

\*     \*     \*

24.     The Directors and Officers Policies also include the following exclusionary endorsement:

### EXCLUSION – HARASSMENT, MOLESTATION AND SEXUAL MISCONDUCT

This endorsement modifies insurance provided under the following:

NOT FOR PROFIT DIRECTORS AND OFFICERS LIABILITY POLICY

This policy does not apply to any claims that result from or arise directly or indirectly out of the actual or alleged:

**1.**     Physical, verbal or mental harassment of any person; or

**2.**     Offensive or illegal sexual acts or behavior committed by any insured person. Such acts or behavior include, but are not limited to: sexual exploitation, sexual molestation, sexual assault and sexual abuse.

25.     The Directors and Officers Policies each contain an endorsement that states:

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same 'occurrence' or 'claim', the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued

by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## THE CLAIM IS FIRST MADE

26.    Shahade was allegedly employed by US Chess from 2006 until September 2023. Shahade allegedly served as an officer of US Chess and Director of Women's Programs.

27.    On information and belief, in or about June 2022, Shahade sent an email (the "Claim Email") to US Chess alleging that in 2011 and 2014 she was sexually harassed and assaulted by Alejandro Ramirez, a male Chess Grandmaster who allegedly served as a member and contractor/agent of US Chess.

28.    Shahade alleged that US Chess' alleged "worship" of Mr. Ramirez allegedly "enabled" these alleged assaults.

29.    This email further claimed that "besides the rumors about Ramirez possibly having harassed other women, 'he even assaulted me once.'"

30.    Shahade alleged that US Chess and/or Bauer retaliated against her by "improperly release[ing] confidential facts about her assaults," publicly "attack[ing] her and her reputation," and "constructively discharg[ing] her."

31.    Shahade alleged that US Chess, Bauer and/or Tamburro are liable to her under the "Racketeer Influenced and Corrupt Organizations (RICO) Act" and "by engaging in a fact pattern of Human Trafficking, Tax Fraud, Fraud, Retaliation,

Hostile Work Environment, Constructive Discharge, Defamation, Intentional Infliction of Emotional Distress, Conspiracy to Damage victim Shahade's Business Reputation, engaging in actions which place her in a False Light and, Invading her Privacy by releasing protected confidential information and engaging in victim shaming."

32.     Shahade contended that "as part of her remedies," she "seeks an order referring US Chess to the IRS for further action to revoke its tax status."

33.     The Claim Email was not reported to West Bend.

## THE UNDERLYING LAWSUIT

34.     On or about July 17, 2024, Shahade filed a complaint styled *Jennifer Shahade v. United States of America Chess Federation an Illinois Corporation, a/k/a United States Chess Federation, d/b/a US Chess, Randy Bauer, individually an in his capacity as Board President, Peter Tamburro, A New Jersey resident, individually, John and Jane Does 1-100, ABC Companies 1-100, individually Persons or Entities Defendants or unnamed or Unknown including any such Civil Rico co-conspirators*, in the Superior Court of New Jersey, Monmouth County, Law Division, Docket No. MON-L-002326-24  on or about July 17, 2024 (the "Shahade Complaint"). See Exhibit 9. The Shahade Complaint was subsequently removed to this District.

35.     The Shahade Complaint mirrors many of the allegations of the Claim Email. Specifically, Shahade claims that in August 2011 and again in March 2014, she was physically and sexually assaulted by Grand Chess Master Alejandro Ramirez. Shahade claims to have publicly tweeted his name in February 2023 because no action had been taken against him by US Chess following the Claim Email which was, in her opinion, sufficient to prevent him from having contact with other potential victims, including children.

36.     Shahade alleges that on July 11, 2023, she wrote an email to US Chess' Executive Director, *reminding* him of her many previous warnings about Ramirez. She claims to have been constructively and retaliatorily discharged on September 6, 2023.

37.     Shahade alleges that an individual referred to as "DR" allegedly stalked two female chess players and sent emails to her to engage with his obsession. Shahade claims to have emailed the US Chess Executive Director and President expressing concerns about DR in 2012. In 2017, she wrote another email to US Chess Staff about the alleged stalker. However, he was not apparently sanctioned by US Chess, and has continued to play in New Jersey as recently as 2024.

38.     The Shahade Complaint alleges US Chess republished and distributed a webpage and adopted a derogatory and factually false article written by Tamburro applauding alleged responsiveness to the reportedly vile conduct. The article, in her

opinion, downplayed her complaints and was not fact-checked. She references an email to US Chess that said, "A US Chess female member alleged . . . severe abuse/molestation by him started when she was underage. . . ." This was allegedly sent to US Chess in January 2021.

39.    Shahade alleges that Tamburro is the senior editor and co-founder of American Chess Magazine, a US Chess Delegate and New Jersey Chess Federation President.

40.    Shahade alleges that Tamburro's goal in publishing various articles was "to put Shahade in a false light, invade her privacy, publish falsehoods about her and thereby buttress the actions of US Chess by defrauding" the public and US Chess donors, contributors and participants.

41.    Shahade claims to have notified US Chess about Ramierz in June 2020, January 17, 2021, January 22, 2021, December 20, 2021, and the summer of 2022.

42.    The Shahade Complaint alleges that in October 2018, Shahade notified members of the US Chess Board about an art piece exposing abuse and control against women players.

43.    Shahade alleges on June 6, 2022, she sent an email to US Chess that she was personally attacked by Alejandro Ramirez that included allegations of "severe abuse and molestation" against an underaged victim.

44.    The Shahade Complaint seeks damages for retaliation, discrimination, violation of New Jersey whistleblower statutes, gender bias and discrimination, creation of a hostile work environment, retaliation, intentional and/or grossly negligent intention of emotional distress, mental anguish, emotional pain and suffering, humiliation, stress, anxiety, physical pain and suffering, defamation, false light and/or invasion of privacy, and violations of the New Jersey Civil Racketeer Influenced Corrupt Organizations Act.    Shahade seeks relief in the form of declaratory judgment, a restraining order, and an award of both compensatory and punitive damages.

## COUNT I – DECLARATORY JUDGMENT

45.    West Bend incorporates the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

46.    West Bend is participating in the defense of US Chess and Bauer with respect to the Shahade Complaint under a reservation of rights to specifically seek a declaration that there is no insurance coverage available, under the Employment Liability Policy issued for the May 31, 2022 to August 30, 2022 period, based on the date of the Claim Email.

47.    West Bend has declined coverage to Tamburro because he is not an insured.

48.     West Bend does not have a duty to defend or indemnify US Chess, Bauer, or Tamburro with respect to this matter for the many reasons, including but not limited to:

a.      The "claim" was first made during the May 31, 2022 to August 30, 2022 policy period, but was not reported to West Bend during that term, and thus the "claim" does not meet the claims made and reported provision of any of the Policies.

b.      Shahade's allegations do not seek "damages" arising out of "employment practices" and thus the "claim" does not meet the requirements set forth in Paragraph **1.** of "**SECTION I – COVERAGE: EMPLOYMENT PRACTICES LIABILITY, A. INSURING AGREEMENT**" of the potentially implicated Employers Liability Policies; or

c.      Shahade's allegations do not seek "damages" arising out of "Wrongful Acts" and thus the "claim" does not meet the requirements set forth in Paragraph **1.** of "**SECTION I – COVERAGE: NOT FOR PROFIT ORGANIZATION DIRECTORS, OFFICERS AND TRUSTEES LIABILITY** of the potentially implicated Directors and Officers Policies; or

d.      Shahade seeks remedies that do not qualify as "damages" as defined by the potentially implicated Employers Liability Policies and thus the "claim" does not meet the requirements set forth in Paragraph **1.** of "**SECTION I – COVERAGE: EMPLOYMENT PRACTICES LIABILITY, A. INSURING AGREEMENT**"; or

e.      Shahade seeks remedies that do not qualify as "damages" as defined by the potentially implicated Directors and Officers Policies and thus the "claim" does not meet the requirements set forth in Paragraph **1.** of "**SECTION I – COVERAGE: NOT FOR PROFIT ORGANIZATION DIRECTORS, OFFICERS AND TRUSTEES LIABILITY**;** or

f.      Some or all of the alleged "employment practices" at issue allegedly occurred before the potentially implicated Employers Liability

Policies' Retroactive Date and thus the "claim" does not meet the requirements set forth in Paragraph **2.c.** of "**SECTION I – COVERAGE: EMPLOYMENT PRACTICES LIABILITY, A. INSURING AGREEMENT**"; or

g.      Some or all of the alleged "wrongful acts" at issue allegedly occurred before the potentially implicated Officers and Directors Policies' Retroactive Date and thus the "claim" does not meet the requirements set forth in Paragraph **1.e** of "**SECTION I – COVERAGE: NOT FOR PROFIT ORGANIZATION DIRECTORS, OFFICERS AND TRUSTEES LIABILITY**"; or

h.      Tamburro does not qualify as an "insured" under the Policies; or

i.      US Chess was aware by May 31, 2019 of "facts and circumstances that "would cause a reasonable person to believe a 'claim' would be made" and thus Paragraph **1.** of "**SECTION I – COVERAGE: EMPLOYMENT PRACTICES LIABILITY, C. EXCLUSIONS**" of the potentially implicated Employers Liability Policies removes coverage for this "claim"; or

j.      US Chess was aware by May 31, 2019 of "facts and circumstances that "would cause a reasonable person to believe a 'claim' would be made" and thus Paragraph **3.a** of "**SECTION I – COVERAGE: NOT FOR PROFIT ORGANIZATION DIRECTORS, OFFICERS AND TRUSTEES LIABILITY**" of the potentially implicated Officers and Directors Policies removes coverage for this "claim"; or

k.      Shahade's allegations fall within each of the above-referenced Exclusions and therefore there is no coverage available to any insured; or

l.      Due to prior knowledge; or

m.      Due to any other reason set forth in the position letters sent regarding these claims.

49.     An actual controversy exists between West Bend, US Chess, Bauer,

Tamburro, and Shahade concerning their respective rights under the Policies and,

therefore, there is a justiciable controversy that is ripe for determination by declaratory judgment.

50.    Therefore, a declaratory judgment is both necessary and proper to determine the rights, obligations and liability that exist between West Bend, US Chess, Bauer, Tamburro, and Shahade under the Policies in connection with the Shahade Complaint.

WHEREFORE, Plaintiff West Bend Insurance Company, formerly known as West Bend Mutual Insurance Company, prays that this Court enter judgment in its favor and declare the following:

a.    The Policies do not provide coverage for the "claim" made by Shahade against US Chess, Bauer, and Tamburro;

b.    The Policies do not provide coverage for the Shahade Complaint against US Chess, Bauer, and Tamburro;

c.    West Bend does not have a duty to defend US Chess, Bauer, or Tamburro against the "claim" made by Shahade, the Shahade Complaint, or any other claim or lawsuit that may be filed in connection with same;

d.    West Bend does not have a duty to indemnify or pay for any judgment or settlement entered against or with US Chess, Bauer, or Tamburro in connection with the "claim" made by Shahade or the Shahade Complaint; and

e.      Any other and further relief this Court may deem just and proper.


Dated:      New York, New York
            December 23, 2024

                                    **KENNEDYS CMK LLP**


                                    Laura Dowgin, Esq.
                                    John Gainey, Esq.
                                    570 Lexington Avenue, 8th Floor
                                    New York, NY 10022
                                    T: 212-252-0004
                                    Laura.dowgin@kennedyslaw.com
                                    Jack.Gainey@kennedyslaw.com
                                    *Attorneys for Plaintiff*
                                    *West Bend Insurance Company, f/k/a*
                                    *West Bend Mutual Insurance*
                                    *Company*

27